**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CoxCom, Inc. d/b/a** | : | |
| **Cox Communications New England** | : | |
| **Plaintiff** | : | **Case No.: 04-CV-391 T** |
| **vs** | : | |
| **Lori Dale** | : | |
| **Defendant** | : | |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff hereby moves this Court for a Judgment by Default in the above-entitled action against the Defendant. The Plaintiff also requests that this court assess non-Liquidated Damages after considering the Plaintiff's filings made herewith. The Plaintiff contends that the court should be able to assess non-liquidated damages in this action based upon the facts as determined through the Defendant's default all in accordance with Fed. R. Civ. P. 55(b)(2). However, should this court determine that testimony is necessary or even helpful for the assessment of non-liquidated damages, the Plaintiff requests that such a hearing be scheduled.

In support of this Motion, Plaintiff submits:

1. That a Default was entered against the Defendant on January 28, 2005.

2. That Defendant has still failed to reply or otherwise defend the claims set forth in Plaintiff's complaint;

3. That Defendant is not an infant or incompetent;

4. That Defendant is not in the military service; and,

5. That the Plaintiff is entitled to damages and other civil remedies as set forth below.

In further support of this Motion, please see:

1. Memorandum of Law in Support of Plaintiff's Motion for Default Judgment.

2. Affidavit of Attorney Francis S. Holbrook, II.

3. Affidavit of Cox Employee

4. Proposed Order of Default.

**WHEREFORE** Plaintiff respectfully requests that this court enter Default Judgment in favor of the Plaintiff and against the Defendant for the following:

Pursuant to all of the above, the Plaintiff is entitled to a Default Judgment as follows:

$7,000.00 in statutory damages pursuant to Title 47 Section 47 U.S.C. § 553(c)(3)(A)(ii) and/or 47 U.S.C. § 553(c)(3)(B).

Costs of $195.00 pursuant to Title 47 Section 553;

3. The issuance of a permanent injunction pursuant to Title 47 Section 553 utilizing the following language or language of a similar nature:

"The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in violation of provisions of Title 47; and,

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961; and

5. Attorney's fees $1,100.00 pursuant to Title 47 § 553.

Respectfully Submitted for the Plaintiff,
CoxCom, Inc.
dba Cox Communications New England
By Its Attorney,

8/31/05
Date

Francis Holbrook (Bar No.: 3412)
Miller, Scott & Holbrook
122 Touro St.
Newport, RI 02840

**CERTIFICATE OF SERVICE**

August I, Francis Holbrook, attorney for the Plaintiff, hereby certify that on the 30th day of ~~September~~, 2005, I served a copy of the foregoing Motion for Default Judgment, Memorandum of Law, Affidavit of J Francis Holbrook, Affidavit of Cox Employee and Proposed Order sent via first class, postage pre-paid to:

Lori Dale
95 Burbank Drive
Warwick, RI 02886

[signature]

2640/cb

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CoxCom, Inc. d/b/a :
Cox Communications New England :
Plaintiff : Case No.: 04-CV-391 T
vs :
Lori Dale :
Defendant :

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

### 1. Effect of Default

The Plaintiff filed a Complaint in this action on September 3, 2004. The Defendant was served with copies of the Complaint, Summons and other pertinent documentation. Thereafter, the Defendant failed to appear in this action. On January 28, 2005 Default was entered against the Defendant in this action. Plaintiff has now moved for Default Judgment against the Defendant.

The Default already entered in this action against the Defendants is similar to a finding of liability against the Defendant. See, *Almedia v. Secretary of Health Education of Welfare*, 622 F. 2d 1044 (1st Circuit 1980). Accordingly, based upon the Default that has already entered against the Defendant, the Plaintiff has now proven the liability of the Defendants as to the matters set forth in the Plaintiff's pleadings.

### 2. Analogous Case Law

The Plaintiff has moved forward for Default pursuant to 47 U.S.C. § 553, a provision of Title 47 that prohibits the unauthorized interception of television signals from the cable television system. This District Court has specifically ruled that Title 47 U.S.C. § 553 is an appropriate statutory remedy for the unauthorized interception of television signals from a coaxial cable. See *TCI Cablevision of New England, Inc. v Pier House Inn, Inc.* 930 F Supp 727 (DRI 1996).

The telecommunications provisions of the United States Code also contain the provision, 47 U.S.C. § 605, which prohibits the unauthorized utilization of interstate radio-originated communications. Section 605 is extremely similar to 47 U.S.C. § 553. Both provisions essentially bar the unauthorized interception of television signals. Also, the statutory damage provisions for non-commercial defendants in § 605 and § 553 are

extremely similar. In fact, the Second Circuit has held that where there is an unauthorized interception of signals from a coaxial cable, and the signals intercepted from the cable include interstate radio-originated communications, both §605 and §553 are violated. See *International Cablevision, Inc. v. Sykes* ("Sykes I"), 997 F. 2d 998, 1007 (2d Cir. 1993); *International Cablevision, Inc. v. Svkes* ("Sykes II"), 75 F.3d 123, 131 n.4 (2d Cir. 1996); but see *TCI Cablevision of New England, Inc. v Pier House Inn, Inc.* 930 F Supp 727 (DRI 1996). In any event, even if § 605 might not apply for unauthorized cable television violations in the District of Rhode Island, the cases decided pursuant to 47 U.S.C. § 605 are, at least, analogous or similar to §553 cases. Accordingly, the Plaintiff will make citations to § 605 cases simply as persuasive authority.

In the case at bar, the plaintiff alleged that the Defendant or his agent covertly modified a converter/descrambler that had been issued to the Defended by the Plaintiff. After the modification the converter/descrambler became a non-addressable descrambling device (which descrambled signals in ignored instructions from the plaintiff). A non-addressable converter/Descrambler is sometimes referred to as a so called "black box". In the case at bar, the plaintiff alleges that the Defendant was using a homemade black box. The plaintiff may cite to cases where the Defendants in the cases were using after- market, black-market black boxes. These black box cases are sufficiently similar and analogous to this civil action such that they are, at least, persuasive authority. Based upon and Additionally, the Plaintiff may cite to satellite television cases wherein the defendants utilize satellite de-scrambling devices that are also similarly analogous to the homemade black box utilized by the Defendant in this Civil Action.

**3. The Plaintiff's Case without the Default**

Even without the Defendant's Default, the Plaintiff still has a strong case against the Defendant. Possession of a television descrambling device is sufficient evidence from which a trier of fact could infer that the device was used to descramble the Plaintiffs television signals. The decision in the Florida District Court case of *DirecTV. v. Miller*, Case no 6:03-cv-1027-Orl-19KRS (a copy of the unpublished case is attached hereto as "**Exhibit A**") supports this proposition. In the Miller case, the plaintiff, DIRECTV, had evidence that the defendant possessed a satellite television descrambling device called an "unlooper". The Defendant in the *Miller* case moved for Summary

Judgment against DIRECTV contending that DIRECTV lacked the necessary "direct evidence" such as eyewitness testimony or videotape of some wrongdoing. The Court rejected this argument stating:

> A reasonable jury could conclude that the Defendant illegally stole DirecTV's programming. Based on their life experience, a jury could reasonably assume that people only buy electronic equipment such as televisions, computers, or (in the case of Defendant) satellite piracy unloopers when they plan to use such equipment. It would be a strange world, after all, if people regularly bought such equipment and then put it in the closet to collect dust. *Id* at 7

Moreover, the Defendant's actual possession of a television descrambling device can lead to the reasonable inference that the device was used to descramble. In *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), *aff'd*, 224 F.2d 430 (2d Cir. 2002), there was evidence that the defendants purchased and installed cable television de-scramblers that would allow them to illegally view the plaintiff's cable television programming. *Id.* at 456. Although there was no so-called "direct" evidence that the Defendant had ever actually used the devices the court, nonetheless, found the Defendant liable for using the devices. After noting that the Defendant had engaged in the transactions of obtaining descrambling devices from a distributor named "Radil" the court said:

> Based on the record here, the most reasonable inference is that each such transaction was engaged in with Radil so the descrambler could be used for its intended purpose, namely to receive cable services over TCI's system; there is no evidence of non-use or any other use. Thus, the court concludes that each of the named defendants used and benefited financially from the descrambler sold by Radil, commencing in 1992 *Id.* at 460.

The Second Circuit affirmed the pertinent elements of the Connecticut District Court's liability decision in the *Caruso* case. In fact, the Second Circuit stated that the purchase and installation evidence was ***"at least"*** enough evidence for a rebuttable presumption of use. The court said:

> "In the pending case, the seller's computer records showed the names of [the Defendants] and the devices were installed in their home. That evidence suffices to create ***at least*** a rebuttable presumption that each of them is liable." *Community Television Systems, Inc. v. Caruso*, 284 F.3d 430, at 432 (2nd Cir. 2002) ( emphasis added).

**4. Well Pled Facts Deemed Proven Upon Default**

The Default already entered in this action against the Defendant is similar to a finding of liability against the Defendant. See, *Almedia v. Secretary of Health Education of Welfare*, 622 F. 2d 1044 (1st Circuit 1980). Accordingly, based upon the Default that has already entered against the Defendants, the Plaintiff has now proven the liability of the Defendant as to the matters set forth in the Plaintiff's pleadings.

Accordingly, the Plaintiff has proven certain pertinent facts, including but not limited to the facts that:

a. The Plaintiff has the legal franchise to sell cable television services in the Defendant's area;

b. The Plaintiff distributes its cable television services to its subscribers utilizing scrambling technology such that a subscriber will receive descrambled (clear view) signals only for those services the subscriber is authorized to receive;

c. From on or before October 30, 2001 the Defendant was in possession of an illegal descrambling device capable of receiving the Plaintiff's signals without authorization and without payment for said signals.

d. From on or before October 30, 2001 the Defendant utilized an unauthorized descrambling device to receive and/or intercepted the Plaintiff's premium cable channels and pay per view events without authorization and without payment to the Plaintiff; and

e. The Defendants' unauthorized interception of signal was done knowingly and willfully.

Based upon these facts and others set forth in the Plaintiff's pleadings, the Defendant is now liable to the Plaintiff for willful violations of Title 47 U.S.C. § 553(a). Specifically, the Defendant's actions violated §553(a)(1), which provides:

> **No person shall intercept or receive or assist in intercepting or receiving any communications services offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.**

## II. Damages

### 1. Damage Provisions and Remedy Provisions in Title 47 U.S.C. § 553(c)

Title 47 U.S.C. §553(c) provides civil damages and remedies to an aggrieved party from a Defendants who have violated the above referenced §553(a) (1). Various subsections of § 553 (c) provide:

> The Court may grant a final injunction to prevent further violations of §553 (a)(1) pursuant to 47 U.S.C. § 553 (c)(2)(A);
> The Court may grant recovery of full costs including awarding reasonable attorney's fees to the aggrieved party who prevails pursuant to 47 U.S.C. 553(c)(2)(C); and
> The Court may award actual damages or the Court may, at the Plaintiff's election, award statutory damages in a sum of not less than $250.00 or more than $10,000.00 as the court considers just, pursuant 47 U.S.C. § 553(c)(3)(A)(ii).
> The court can increase the statutory damage award by up to $50,000.00 if the violations of §553 (a) were willful and private financial gain pursuant to 47 U.S.C. § 553(c)(3)(B).

**2. The Assessment of Statutory Damages**

Although 47 U.S.C. §553(c) provides little guidance on the assessment of statutory damages, courts have used a variety of methods when assessing statutory damages including:

**(a) Estimating actual damages**, See *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004), *Charter v Burdulis* __ F.Supp.2d __ 2005 WL 984223 (D. Mass 2005) and *Comcast v Doucette* CA NO, 03-11779-REK (D. Mass 2005) (a copy of the unpublished case is attached hereto as "**Exhibit B**");

**(b) Assessing additional damages, over and above an estimate of actual damages, pursuant to the exemplary damages provision of the statute, 47 U.S.C. § 553(c)(3)(B), based upon the willfulness and private financial gain of the defendant.** See *Charter v Burdulis* __ F.Supp.2d __ 2005 WL 984223 (D. Mass 2005) and *Comcast v Doucette* CA NO, 03-11779-REK (D. Mass 2005), *Cablevision v Lokshin*, 980 F. Supp. 107 (E.D.N.Y. 1997)

**(c) Assessing additional damages as a form of deterrence,** See *Time Warner v Domsky*, No. 96 Civ. 6851, 1997 U.S. Dist. LEXIS 13505 (S.D.N.Y. Sept. 2, 1997) (a copy of the unpublished decision is attached here to as **"Exhibit C"**), *DIRECTV v Getchel* 2004 WL 1202717 (D. Conn. 2004) (a copy of the unpublished decision is attached here to as **"Exhibit D"**) and *Cablevision v Collins* 2004 WL 1490307 (S.D.N.Y. 2004) (a copy of the unpublished decision is attached here to as **"Exhibit E"**).

**3. The Estimate of Actual Damages**

**A. Estimate of Actual Damages per month utilizing *reasonable inferences of use*.**

By Affidavit, the Plaintiff has asserted that:

a. Based upon the Plaintiff's investigation into this matter, it can be inferred that the Defendant was using a modified converter/descrambler that was capable of receiving all of the Plaintiff's analog premium channels and pay-per-view channels from March 2001 until that box was removed them the Defendant's home in October, 2001, a period of 8 months.

b. During the 8 months that the Defendant was in possession of the device, the cost of the Plaintiff's basic services varied slightly but the Defendant paid only the bare minimum monthly amount to the Plaintiff of approximately $15.38.

c. An individual in possession of a descrambling device would still need to purchase some cable television signals in order to allow signals to enter the home to thereafter be descrambled;

d. During the 8 months that the Defendant was in possession of the device, the cost of and the number of premium channels offered by the Plaintiff varied, but the approximate charge for purchasing all of the premium stations offered by the Plaintiff was $32.85 per month.

e. During the 8 months that the Defendant was in possession of the device, the costs of and the number of pay-per-view offerings from the Plaintiff varied but, by way of approximation, most movies cost $3.95, adult movies cost $8.95 and special events, such as boxing, the average cost $32.45. The Pay-per-view movies were available on multiple channels, 24 hours a day and there was at least one special event per month.

In the case of *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004) *Comcast v Doucette* CA NO, 03-11779-REK (D. Mass 2005) the Massachusetts Federal District Court estimated damages for the use of a homemade black box by finding that it was reasonable to infer damages based upon:

a. The differential between what the Defendant was paying for services and the value of the total amount of premium channels he would receive through using the de-scrambling device; and

b. The value of ten unauthorized pay-per-view movies per month; and

c. The value of four additional more expensive pay-per-view selections per month.

Using similar inferences of use and applying the numbers found in the Plaintiff's Affidavit, the reasonable inference of damages per month would be $108.15.

**B. Estimate of number of months of unauthorized interception.**

The court in the *Naranjo* case found that the estimated duration of the unauthorized interception began at the time when the Defendant came into possession of the subject device *and* last ordered a premium channel or pay-per-view advent and concluded as of the date the device was returned to the plaintiff. In this civil action this Defendant never ordered a premium channel and ordered only one pay-per-view in 1998 while this particular converter descrambler was in her possession. From this information, we can infer that the box was modified on or before the date of the anonymous phone call in March of 2001 and it was utilized until it was returned in October of 2001. This represents approximately 8 months of unauthorized interception.

**D. Estimate Total Actual Damages**

Utilizing the monthly damage estimate as set forth above and applying that monthly damage amount over the 8 months of estimated unauthorized interception we calculate an estimated actual damage figure of $4,217.85.

**4. Assessing additional damages, over and above an estimate of actual damages, pursuant to the exemplary damages provision of the statute, 47 U.S.C. § 553(c)(3)(B), based upon the willfulness and private financial gain of the defendant.**

In the recent cases of *Charter v Burdulis* __ F.Supp.2d __ 2005 WL 984223 (D. Mass 2005) the Massachusetts Federal District Court found it could assess additional damages pursuant to 47 U.S.C. § 553(c)(3)(B) if it found the violations of 47 U.S.C. § 553(a) were willful and were for a private financial gain. *Id* at 20. The court went on to find that it was indeed willful to purchase a descrambler and install it. *Id* at 22.

The court in the *Charter* case also found that "An individual's use of a descrambler to obtain cable programming without paying for it constitutes 'private financial gain' within the meaning of the statute, absent usual circumstances not apparently present here." *Id* at 25. The *Charter* court stated that this reasoning was also followed in the case of *Cablevision v Lokshin*, 980 F. Supp. 107 (E.D.N.Y. 1997). The *Charter* was just cited favorably and followed in the case of *Comcast v Doucette* CA NO, 03-11779-REK (D. Mass 2005). Accordingly the plaintiff's asserts that the Defendant's actions in purchasing and utilizing a black box to avoid paying cable television bills were willful and intentional and these actions were done to give the Defendants a private financial gain subjecting them to the additional statutory damages referenced above.

**5. Assessing Additional Damages as a form of Deterrence.**

At least three separate cases where courts have *specifically added statutory damages for the purpose of deterrence*. See *Time Warner v Domsky*, No. 96 Civ. 6851, 1997 U.S. Dist. LEXIS 13505 (S.D.N.Y. Sept. 2, 1997), *DIRECTV v Getchel* 2004 WL 1202717 (D. Conn. 2004) and *Cablevision v Collins* 2004 WL 1490307 (S.D.N.Y. 2004).

The court in the *Domsky* case clearly set forth the deterrence reasoning when, after estimating the damage in a manner similar to *Naranjo* it said:

> While I find these amounts reasonably approximate the lost revenue from the use of a pirate box, it would not be sufficient deterrence if the damages payable by a violator were limited to the value of the stolen services. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid. *Id* at 18

The *Domsky* court then went on to double its estimate of damages as a form of deterrence when assessing the statutory damages. This reasoning was recently explicitly followed in the *Collins* case where that court also doubled its estimate of damages as a form of deterrence when assessing statutory damages.

The Connecticut Federal District Court recently considered willfulness and deterrence when assessing statutory damages for the unauthorized interception of television signals in the case of *DIRECTV v Getchel,* 2004 WL 1202717 (D. Conn. 2004). The court in the *Getchel case* cited to the case of *Cable/Home Communications corp. v. Network Productions, Inc.*, 902 F. 2d 829, 852 (11th cir. 1990) for the proposition that "In its broad discretion for determining statutory damages, the district court should consider both the willfulness of the Defendant's conduct and the deterrent value of the sanction imposed." *Id* at 3. The court then went on to assess statutory damages above the statutory minimum finding that the minimum would "have no deterrent effect" . *Id* at 3.

In this civil action, the Defendant has defaulted to the specific allegations that the violations were made in a willful and knowing manner. Following the line of reasoning set forth in these cases, this court should double its estimate of actual damages or, at a minimum, the court should make an assessment of damage significant enough to act as a deterrent and to take into account the willfulness of the violation.

**6. Conclusion as to Statutory Damages**

Based upon the statute, the arguments and the case law referenced above, statutory damages in this case could be assessed even higher than the $7,000.00 that is being sought by the Plaintiff.

## III. Injunctive Relief

Based upon the Defendant's liability as determined by the Default, the Plaintiff is entitled to injunctive relief against the Defendant pursuant to Title 47 U.S.C. § 553 (c) (2)(A) which provides that the Court:

> "May grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1) of this section"

The Plaintiff need not prove irreparable harm for the injunction to issue. Where express authority for issuance of statutory injunctions is provided by legislative enactment, an injunction may issue without resort to the traditional "equitable" prerequisites so long as liability has been established under the statute. See *General Instrument Corp. v. Nu-Tek Electronics & Manufacturing, Inc.*, 3F. Supp 2d 602, 607 (E.D.Pa.1998), aff'd 197F.3d 83 (3d Cir.1999). The terms of the requested injunction are reasonably drafted to thwart any future piracy activities by the Defendant.

## IV. Attorney's Fees

Pursuant to Title 47 U.S.C. 553(c)(2)(C), the Court should direct the recovery of full costs, including awarding reasonable attorneys fees to an aggrieved party who prevails. The First Circuit follows the "lodestar" approach when awarding attorney's fees pursuant to a Federal statutory authorization. See, *Furtado v. Bishop*, 635 F.2d 915, (1st Cir. 1980). Using the "lodestar" approach, the Court would normally multiply the number of hours worked by a reasonable hourly rate. Utilizing the "lodestar" approach, the Court would, in essence, multiply the reasonable number of hours worked by a reasonable hourly rate. Plaintiff's counsel has filed an Affidavit with this court that would justify an attorney's fees award of $1,100.00.

.

## V. Post-judgment Interest

The Plaintiff is entitled to post-judgment interest accruing on the Judgment pursuant to 28 U.S.C. §1961. Said statute covers post-judgment interest on civil actions brought to judgment in U.S. District Courts.

## VI. Costs

The Plaintiff is also entitled to costs incurred in this action pursuant to § 553, specifically:

Filing Fee ( including fee for out-of-state attorney): $150.00

| | |
|---|---|
| Sheriff's Service Fee: | $ 45.00 |
| **TOTAL COSTS:** | **$195.00** |

**VII.Conclusion**

Pursuant to all of the above, the Plaintiff is entitled to a default judgment against the Defendant, jointly and severally, as follows:

1. $7,000.00 in statutory damages pursuant to § 553;
2. Attorney's and paralegal's fees of **$ 1,100.00**
3. Costs of **$195.00**.
4. The issuance of a permanent injunction pursuant to Title 47 §553 utilizing the following language or language of a similar nature:

> The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in violations of provisions of Title 47;

5. Post-judgment interest running on the judgment pursuant to 26 U.S.C. § 1961.

Respectfully Submitted for the Plaintiff,
CoxCom, Inc.
dba Cox Communications New England
By Its Attorney,

8/30/05
Date

Francis Holbrook (Bar No.: 3412)
Miller, Scott & Holbrook
122 Touro St.
Newport, RI 02840

2641/cb